IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

EVAN M. SPARKS                                                          PLAINTIFF

V.                          Case No. 3:25-CV-00096-KGB-BBM

FRANK BISIGNANO, Commissioner,
Social Security Administration                                         DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within 14 days of the date of this Recommendation. If you do not file objections, Chief Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.    INTRODUCTION

On August 2, 2022, Plaintiff Evan M. Sparks ("Sparks") filed a Title II application for disability and disability insurance benefits. (Tr. at 15). In the application, he alleged disability beginning on May 26, 2022; he was 37 years old on the alleged onset date. (Tr. at 15, 23). The application was denied initially and on reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") denied Sparks's application on June 3, 2024. (Tr. at 15–25). On April 18, 2025, the Appeals Council denied

Sparks's request for review of the ALJ's decision. (Tr. at 1–5). Thus, the ALJ's decision now stands as the final decision of the Commissioner, and Sparks has requested judicial review. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

## II.    THE COMMISSIONER'S DECISION

The ALJ found, at Step One, that Sparks had not engaged in substantial gainful activity since May 26, 2022, the alleged onset date of disability.[1] (Tr. at 16). At Step Two, the ALJ determined that Sparks has the following severe impairments: depression, anxiety, seizures, obesity, gout, right shoulder problems, and tremor. *Id*.

At Step Three, the ALJ decided that Sparks's impairments did not meet or equal a Listing. (Tr. at 17–19). The ALJ then concluded that Sparks has the residual functional capacity ("RFC") to perform work at the sedentary-exertional level. (Tr. at 19). The ALJ found that Sparks can lift up to ten pounds occasionally, less than ten pounds frequently, stand or walk for about two hours, and sit for up to six hours in an 8-hour workday, with normal breaks. *Id*. The ALJ imposed the following additional limitations: (1) Sparks can no more than occasionally climb ramps or stairs; (2) he can no more than occasionally stoop, kneel, crouch, crawl, and balance; (3) he cannot climb ladders, ropes, or scaffolds; (4) he must avoid all exposure to unprotected heights and hazardous machinery; (5) he

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

must avoid open bodies of water and open flames; (6) he cannot operate a motorized vehicle; (7) he can no more than frequently reach with the right arm; (8) he can no more than frequently handle and finger; and (9) he can perform detailed but not complex work. *Id.*

At Step Four, the ALJ relied upon testimony from a Vocational Expert ("VE") to find that Sparks is unable to perform any of his past relevant work. (Tr. at 23). Based upon additional VE testimony, however, the ALJ found, based on Sparks's age, education, work experience, and RFC, that there are jobs in the national economy that Sparks can perform. (Tr. at 23–25). Therefore, the ALJ concluded that Sparks was not disabled. (Tr. at 25).

## III.    DISCUSSION

### A.    Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*,

399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

### B.    Summary of Relevant Medical History

Sparks alleges disability due to "seizures, jerking tic, gout in both ankles with pain, depression, severe anxiety, dexterity and mobility [limitations] in left side, and arms and hand have started to tremble and shake involuntarily and periodically." (Tr. at 20). First, regarding his seizures, Sparks states that his seizures started at age 13 and occur sporadically, every few years, lasting only a few minutes in duration. (Tr. at 21, 245, 487). A February 2022 MRI of Sparks's brain was normal. (Tr. at 22). As of February 2024, Sparks was not on seizure medication. (Tr. at 21).

Turning to Sparks's mental-health complaints of anxiety and depression, Sparks claims he has daily panic attacks. (Tr. at 48). Sparks, however, did not seek regular psychiatric treatment. (Tr. at 464). A psychological consultative examination showed nothing significant. (Tr. at 21). The examiner found that Sparks was cooperative upon examination and had no signs of anxiety. (Tr. at 463–467). He maintained good eye contact and had logical and relevant thought process. *Id*. She noted that depression was mild. (Tr.

at 467). The examiner wrote that Sparks had no restrictions on day-to-day adaptive functioning, although his wife helped with daily activities. (Tr. at 468). The examiner said he could have adequate and socially appropriate communication. *Id.* He could sustain attention. *Id.* He had no difficulty understanding directions. *Id.* He was able to concentrate, but he showed poor working memory. *Id.*

Sparks has a demonstrated right arm tremor. (Tr. at 374, 406). However, his arm tremor (and anxiety) improved over the relevant time period. *Id.* at 22. A neurological examination noted right arm spasms and jerks, and an intermittent tremor was identified. (Tr. at 21). Likewise, physical therapy notes from January 2024 identified neurological deficits of hypertonia with certain stimuli and myoclonus of the right upper extremity associated with dysgraphia. *Id.* Sparks had minimal grip deficits, however. *Id.*

Sparks testified that he uses a rescue inhaler for asthma two or three times a day. (Tr. at 21, 42). But his medical records show mild intermittent asthma without complication. (Tr. at 22).

Lastly, regarding Sparks's gout and mobility issues, Sparks said he used an assistive device, but, routinely, his gait and station were normal on examination. (Tr. at 412–414, 431–434, 512, 514). Sparks's body mass index was reported as 40.3 in March 2022. (Tr. at 22). X-rays of Sparks's ankles taken in 2023 showed degenerative changes but all bony structures intact with no fracture or dislocation. (Tr. at 21). Small spurs were noted in both ankles. *Id.* Gout was identified in both ankles during an internal medicine consultative examination on April 7, 2023. *Id.* On January 30, 2024, Sparks was described as presenting to physical therapy with no pain. *Id.* at 22, 491.

One of Sparks's providers filled out a gout medical assessment. (Tr. at 518–521). She assessed limitations on his daily abilities. She said he could sit and stand for about two hours a day. *Id*. She said he had to elevate his legs 50% of the workday but must also walk every 15 minutes for 30 minutes at a time, which the ALJ noted was inconsistent. *Id*. ("If one has to elevate their legs 50% of the time, but also walk for 30 minutes every 15 minutes, then it is impossible to elevate their legs 50% of the time."). She said Sparks did not need a cane or assistive device but would miss more than four days per month due to his impairments. *Id*. The ALJ found this opinion not persuasive.[2]  (Tr. at 22).

The state-agency medical consultants found Sparks was capable of light work. (Tr. at 23). The ALJ found these opinions persuasive but assessed more restrictive RFC limitations. *Id*.

### C.    Sparks's Arguments on Appeal

In his brief, Sparks contends that the evidence supporting the ALJ's decision is less than substantial, warranting reversal. (Doc. 8). Specifically, Sparks argues that: (1) the RFC

---

[2] The Administration promulgated new regulations—effective March 27, 2017—governing how ALJs assess medical opinion evidence. The new rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and is consistent with other evidence in record," *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-34-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (Jan. 18, 2017), & Articulation Requirements for Medical Opinions and Prior Administrative Medical Findings – Claims filed on or after March 27, 2017, SSA POMS DI 24503.030).

6

did not incorporate all of his limitations, *id*. at 5–9; (2) the ALJ did not consider all of his impairments in combination, *id*. at 9–11; and (3) the ALJ erred at Step Three in his evaluation of the Listings, *id*. at 13–16. The Court will address each argument, in turn.

### 1. RFC

First, Sparks argues that the RFC did not incorporate all of his limitations.[3] The Court disagrees.

In this case, the ALJ discussed various factors as he assessed Sparks's RFC. For example, Sparks did not require more than conservative care; he improved over time; his seizures were infrequent; he used only an inhaler for asthma; and he demonstrated normal gait and station on examination. (Tr. at 20–22). The ALJ noted that the psychological consultative examiner found depression to be mild. *Id*. The ALJ also noted that Sparks lived alone[4] but had help from others, "which means that he does his own activities of daily living." *Id*. at 21.

The ALJ considered the record as a whole, including discussing the medical opinions, and assigned a restrictive RFC for sedentary work (the lowest level of exertional work) with many postural limitations. (Tr. at 19). He assigned seizure precautions, limiting Sparks further than did the state-agency consultants. (Tr. at 23). He accounted for Sparks's

---

[3] "A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence." *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citation omitted). "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) (citing *Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984)). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

[4] On April 16, 2024, Sparks testified that he was divorced and living alone. (Tr. at 35).

right-arm tremor by imposing limited right-arm reaching. *Id*. He accounted for mild depression and anxiety with a limitation to detailed but not complex work. *Id*. The ALJ was not required to include RFC restrictions not demonstrated in the record, *McGeorge*, 321 F.3d at 769, and the Court finds that the RFC discussion and assessment were appropriate.

### 2.      Impairments in Combination

Sparks next claims that the ALJ failed to evaluate fully his impairments in combination; in support, however, Sparks makes only generalized arguments about his impairments.[5] (Doc. 8 at 9–11). Contrary to Sparks's argument, the ALJ did discuss all of Sparks's alleged impairments, his conservative treatment, and his improvement over time. (Tr. at 20–23). He addressed the medical opinions. *Id*. He conducted the proper analysis of Sparks's subjective complaints, finding that Sparks's complaints of pain were inconsistent with the balance of the medical evidence. (Tr. at 21). In so doing, he addressed the nature of Sparks's pain, his treatment, and the objective findings showing no more than moderate conditions. *Id*. The ALJ proceeded through the five steps of the disability analysis, including properly relying on testimony from the VE at Step Five that there were jobs that Sparks could perform. (Tr. at 23–25). The Court finds no error.[6]

---

[5] *See* 20 C.F.R. §§ 404.1545(e), 416.945(e); SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996) (the ALJ will consider all medically determinable impairments, even those that are non-severe, when assessing residual functional capacity).

[6] *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (ALJ properly considered the combined effects of impairments when the ALJ noted that the evidence as a whole did not show claimant's symptoms would preclude all work).

### 3.    Listed Impairments at Step Three

For his argument that the ALJ failed to conduct a proper Listings review at Step Three, Sparks cites mostly to his own subjective complaints. (Doc. 12 at 9–11). He mentions the Listings that the ALJ addressed but does not cite specific evidence demonstrating how he satisfied the criteria for each Listing, leaving Sparks's argument undeveloped.[7] In his Decision, the ALJ discussed the Listings for epilepsy (11.02), inflammatory arthritis (14.09), and mental disorders (12.04 and 12.06). (Tr. at 17–19). Specifically, the ALJ noted that Sparks's seizure frequency (occurring sporadically every few years) did not meet the requirements of listing 11.02. (Tr. at 17). Regarding Sparks's inflammatory arthritis, the ALJ found that "[a] documented medical need for a walker, bilateral canes, or bilateral crutches is not shown in the record to support listing 14.09." *Id*. The ALJ referred to the psychological consultative examiner's evaluation in his discussion of Sparks's mental disorders, and the ALJ assessed only mild-to-moderate adaptive functioning limitations at Step Three (this aligned with the consultative examiner's findings). *Id.* While the ALJ's Listings discussion was brief, the balance of his decision supported his Step Three findings.[8] Again, it was Sparks's burden to show he met a Listing, and he did not meet that burden.

---

[7] At Step Three, the burden rests squarely on the claimant to prove she met a Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). The claimant must show that her impairment matches all of the specified medical criteria of a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

[8] An ALJ's failure to address a specific listing or to elaborate on his conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006).

## IV.    CONCLUSION

There is substantial evidence to support the Commissioner's decision that Sparks was not disabled. The RFC incorporated all of Sparks's limitations, the ALJ properly considered Sparks's impairments in combination, and the ALJ did not err at Step Three.

IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's decision be AFFIRMED.

2.    Judgment be entered for the Defendant.

DATED this 16th day of April, 2026.

Benecia Moore

UNITED STATES MAGISTRATE JUDGE